1

2

3

4

5

6      UNITED STATES DISTRICT COURT

7      NORTHERN DISTRICT OF CALIFORNIA

8

9    THEODORE HAYNISH, et al.,                    Case No.17-cv-01011-HRL

10              Plaintiffs,

11        v.                                       **ORDER ON DEFENDANTS' MOTIONS TO DISMISS, REQUESTS FOR JUDICIAL NOTICE, AND MOTION TO STRIKE**

12   BANK OF AMERICA, N.A., et al.,

13              Defendants.                         Re: Dkt. Nos. 27, 28, 29, 30, 31

14

15        Theodore Haynish, Jr. and Jacqueline Haynish ("the Haynishes") sue Bank of America,

16   N.A. ("Bank of America"), Select Portfolio Servicing, Inc. ("SPS"), and The Bank of New York

17   Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc.,

18   Asset-Backed Certificates, Series 2005-3 ("Bank of New York"). The Haynishes assert four

19   claims related to the foreclosure of their former home.

20        All three defendants move to dismiss the Haynishes' first amended complaint ("FAC") for

21   failure to state a claim upon which relief can be granted. Dkt. Nos. 27, 29. All defendants also

22   request that the Court take judicial notice of various documents. Dkt. Nos. 28, 31. Additionally,

23   SPS and Bank of New York move to strike portions of the FAC under Rule 12(f). Dkt. No. 30.

24   For the reasons explained below, the Court grants the motions to dismiss in part and denies them

25   in part, grants the requests for judicial notice, and denies the motion to strike.

26        All parties consented to magistrate judge jurisdiction. Dkt. Nos. 9, 13, 18.

27

28

# I.    BACKGROUND

## A.    Factual Allegations

The Haynishes allege the following facts, which the Court must accept as true.  The Haynishes owned and lived in a house at 885 Heatherwood Estates Drive in Hollister, California.  In 2005, they refinanced an earlier home loan and executed a first-lien deed of trust and promissory note.  Dkt. No. 24 at 4.  Bank of America became the Haynishes' loan servicer in late 2010.  *Id.* at 4-5.

The Haynishes suffered a financial hardship in 2011 and set out to obtain a loan modification from Bank of America.  *Id.* at 5.  This set off a "frustrating process, where . . . [the Haynishes] were forced to submit and resubmit countless documents to [Bank of America] to no avail."  *Id.*  In 2015, four Bank of America employees told the Haynishes that their loan modification application was about to be approved.  These employees – named Daniel Gonzalez, David Warner, Jacqueline, and Adriana Rodriguez – nonetheless asked the Haynishes to "resubmit the same documents over and over again."  *Id.*  The Haynishes experienced another economic setback around January 2015, as their monthly income declined from about $10,000 to $8,800.  The Haynishes sent Bank of America paystubs to document their decreased earnings.  *Id.* at 5-6.

In April 2015, a Bank of America employee named Shandra told the Haynishes that their loan modification application was complete and under review.  *Id.*  Bank of America then sent the Haynishes a letter saying the opposite: the application would not be reviewed for failure to submit requested documents.  *Id* at 6.  The Haynishes spoke to yet another Bank of America employee, John Mayes, who reassured them that the letter had been sent in error.  *Id.*  Nevertheless, Bank of America then mailed the Haynishes another request for documents.  In July, Bank of America confirmed receiving a complete loan modification application.  *Id.*

Bank of America caused a notice of trustee's sale to be recorded against the Haynishes' home on July 1, 2015.  *Id.*  The trustee's sale was scheduled for August 4, 2015.  *Id*

In mid-July 2015, SPS took over for Bank of America as the servicer on the Haynishes' loan.  *Id.* at 6-7.  SPS told the Haynishes that "[i]f you were working with your prior servicer on a potential modification . . . SPS will work with you to continue this process with minimal

2

disruption." *Id.* SPS requested more documents from the Haynishes, which they provided.
August 4 came and went, leading the Haynishes to believe that SPS had cancelled the scheduled
trustee's sale. *Id.* at 7.

Yet on September 17, 2015, SPS and Bank of New York caused the Haynishes' house to
be sold at a trustee's sale. *Id.* Bank of New York purchased the property, and the Haynishes left
their home. *Id.*

### B.       Summary of Judicially Noticed Facts

As is discussed below, the Court grants the defendants' requests for judicial notice.
Accordingly, the Court will summarize the relevant judicially noticed facts.

In 2004, the Haynishes executed a deed of trust to secure a promissory note on their home.
Bank of America Req. for Judicial Notice ("BofA RFJ"), Ex. B, Dkt. No. 28. They refinanced the
loan in 2005 and executed a new deed of trust. *Id.* Ex. A. The beneficiary, Mortgage Electronic
Registration Systems, Inc., later assigned the beneficial interest in the deed of trust to Bank of
New York. *Id.* Ex. D.

On July 1, 2015, the trustee, MTC Financial, Inc. d/b/a Trustee Corps, recorded a notice of
trustee's sale with the San Benito County Recorder's Office. *Id*. Ex. N; SPS and Bank of New
York Req. for Judicial Notice ("Loan Defs.' RFJ"), Ex. N, Dkt. No. 31. The notice set a trustee's
sale for August 4, 2015. *Id.* On September 17, 2015, the trustee sold the Haynishes' home to
Bank of New York. *Id.* Ex. O.

### C.       Procedural Background

After initiating and dismissing lawsuits in state court, BofA RFJ, Exs. AA, BB, EE, FF, the
Haynishes commenced this action in early 2017. Dkt. No. 1. All three defendants moved to
dismiss, Dkt. Nos. 11, 15, and the Haynishes filed a first amended complaint, Dkt. No. 24. The
FAC asserted four claims: violations of the California Homeowner Bill of Rights ("HBOR"),
specifically its ban on "dual-tracking" loan modification applications, California Civil Code §
2923.6[1]; wrongful foreclosure; negligence; and violations of California Business & Professions

---

[1] After this case began, some provisions of the HBOR expired. *See* Cal. Civ. Code § 2923.6(k)
(2017) (amended 2018). The Civil Code has since been amended and re-numbered. *See* Cal. Civ.

Code § 17200 ("Unfair Competition Law" or "UCL").

All three defendants moved to dismiss the FAC for failure to state a claim upon which relief may be granted. Dkt. Nos. 27, 29. All defendants also filed requests for judicial notice, Dkt. Nos. 28, 31, while SPS and Bank of New York moved to strike portions of the FAC under Rule 12(f), Dkt. No. 30. The court held a hearing on September 12, 2017.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted). To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). When dismissing a complaint for failure to state a claim, a court should grant leave to amend unless amendment would be futile. *See Chaset v. Fleer/Skybox Int'l*, LP, 300 F.3d 1083, 1087-88 (9th Cir. 2002)

## III.    DISCUSSION

### A.     Requests for Judicial Notice

In addition to the motions to dismiss and motion to strike, all three defendants ask the Court to take judicial notice of various documents. A court generally may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment. There is an exception, however, for facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, as well as matters of public

---

Code § 2924.11 (2018). For this order, though, the Court will cite to the statutes as they existed during the events described in the complaint.

record." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. 2016) (*quoting* Fed. R. Evid. 201(b)). A court may also take judicial notice of documents that are "incorporated by reference" into the complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Bank of America requests that the Court take judicial notice of 32 exhibits, comprising two categories of documents. The first category, Exhibits A through Z, includes the 2005 deed of trust, documents detailing the chain of title, and the September 2015 trustee's deed of sale. The Court takes judicial notice of these documents as they are public records of the County Recorder's Office, and because they are referenced and relied upon by the FAC and the parties do not dispute their authenticity.

The second category of documents, Exhibits AA-FF, come from prior state court litigation between the defendants and the Haynishes. In this latter category, the Haynishes object to the Court taking notice of Exhibit DD, a declaration signed by an SPS employee. In it, the employee avers that between 2012 and 2015, Bank of America issued four letters indicating that the Haynishes were not eligible for a loan modification. BofA RFJ Ex. DD. The four letters are attached to the declaration. Bank of America says the letters are relevant because the Haynishes' HBOR claim may fail if the bank rejected loan modification applications prior to the July 1 notice of trustee's sale.[2]

The Haynishes argue that Exhibit DD is not judicially noticeable, as its contents are subject to reasonable dispute. Dkt. No. 33 at 4. Yet the Haynishes did not deny, in their motion papers or at the hearing, that Bank of America repeatedly denied their loan modification applications. Instead, the Haynishes argued that they adequately alleged experiencing a material change in income since the earlier modification denials. *Id.* at 5-6. Bank of America, for its part, says it offers the exhibit not "for the truth of its contents" but to describe the nature and existence of the prior proceedings. Dkt. No. 37 at 2-3.

A court may take judicial notice of matters of public record but a court may not take

---

[2] The declaration also notes that Bank of America granted the Haynishes a loan modification in 2011. BofA RFJ Ex. DD.

judicial notice of "disputed facts stated in public records." *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). A court may also take judicial notice of documents that are incorporated by reference into the complaint if "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Morton v. Wells Fargo Bank, N.A.*, No. 16-CV-05833-HRL, 2016 WL 7117041, at *2 (N.D. Cal. 2016) (citations omitted). This latter exception to the general rule aims to prevent "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006).

Bank of America's argument that Exhibit DD is offered merely to show the existence of prior proceedings is not well taken. Bank of America is offering Exhibit DD to show that it considered and denied the Haynishes' loan modification applications prior to the notice of trustee's sale. The Haynishes' argument is similarly unpersuasive, as they do not actually contest the accuracy of Exhibit DD's contents.

The Court is satisfied that it can take judicial notice of Exhibit DD – including the four loan modification denial letters – without turning this motion into one for summary judgment. The Haynishes' dual-tracking claim against Bank of America depends on whether they were considered for a loan modification, and they do not deny the authenticity of the records. The Court therefore will take judicial notice of Exhibit DD, along with Exhibits AA-CC, EE, and FF.

SPS and Bank of New York also ask the Court to take judicial notice of documents. One category of documents, including notices of default and notices of trustee's sale, concern the Haynishes' loan. The remaining documents come from earlier litigation between the Haynishes and the defendants. The Haynishes did not object to SPS and Bank of New York's request for judicial notice. The Court grants SPS and Bank of New York's request for judicial notice. All of the documents are noticeable either as public records or documents incorporated by reference into the complaint.

### B. Motions to Dismiss

#### 1. Homeowner Bill of Rights: Dual-Tracking Violations

##### a. Bank of America

The Haynishes allege that Bank of America violated HBOR's ban on dual-tracking loan modification applications when it caused a notice of trustee's sale to be recorded on July 1, 2015. Dkt. No. 24 at 8-9. Bank of America makes two arguments for why the claim should be dismissed. First, Bank of America says it was exempted from having to review to review any more loan modification applications from the Haynishes. No. 27 at 5-7. Second, the Haynishes failed to plead a material HBOR violation. *Id.*

HBOR prohibits dual-tracking, i.e., advancing the foreclosure process while a borrower's loan modification application is under review. *See* Cal. Civ. Code § 2923.6(c). Subject to exceptions not relevant here, a lender may not advance the foreclosure process until it issues a written determination that the borrower is not eligible for loan modification. *Id.* § 2923.6(c)(1). However, HBOR does not protect borrowers who try to delay the foreclosure process by submitting multiple applications. If a lender already denied a modification application, the lender need not consider a new one "unless there has been a material change in the borrower's financial circumstances" since the last application. *Id.* § 2923.6(g). That material change must be "documented by the borrower and submitted to the mortgage servicer." *Id.*

Bank of America points out that it considered and denied pre-July 1 loan modification applications. *See* BofA RFJ Ex. DD. Therefore, in the absence of a material change in Haynishes' financial circumstances, Bank of America was not obligated to consider any additional applications. The Haynishes, however, insist that they did allege a material change in financial circumstances: the January 2015 decrease in monthly income. Dkt. No. 24 at 5-6. They argue that "**any** change in a borrowers' financial circumstances" satisfies the material change requirement. Dkt. No. 33 at 6. Bank of America argues that decreased income "would impact negatively as to [a borrower's] eligibility for a loan modification," and is therefore insufficient to plead a dual-tracking violation. Dkt. No. 27 at 6. Neither side cites to any authority, except for the statute, to support its argument.

At least two courts in this district have concluded that a decreased monthly income may satisfy § 2923.6(g)'s material change requirement. In *Valentino v. Select Portfolio Servicing, Inc.*, No. 14-CV-05043-JCS, 2015 WL 575385, Judge Spero wrote:

> "It is plausible that a borrower's initial modification request could be rejected because the lender concludes that the borrower is still solvent enough to satisfy the original terms, and that the borrower's subsequent loss of income could alter that conclusion and weigh in favor of approving modification. If the legislature had intended that section 2923.6(g) apply only where an applicant can show financial *improvement*, it could have included that requirement in the statute."

2015 WL 575385, at *4; *see also Dias v. JP Morgan Chase, N.A.*, No. 5:13-CV-05327-EJD, 2015 WL 1263558, at *5 (N.D. Cal. Mar. 19, 2015) (decline in income qualifies as material change). The Court finds this argument convincing, and therefore declines to dismiss the dual-tracking claim for failure to allege an increased income.

The Court is also unpersuaded by Bank of America's argument that the Haynishes failed to allege a material HBOR violation. Under the act, a lender is liable to a borrower for material violations of the dual-tracking ban. *See* Cal. Civ. Proc. Code § 2924.12. Bank of America notes that not every HBOR violation can be material, because to conclude otherwise would read the word "material" out of the statute. *See Johnson v. PNC Mortg.*, No. C 14-02976 LB, 2014 WL 6629585, at *9-10 (N.D. Cal. 2014) (allegedly robo-signed assignment of mortgage interest not material because plaintiffs did not allege "that the assignment affected [the plaintiffs'] loan obligations . . . ."). Fair enough, but Bank of America does say how the Court should distinguish the material from the immaterial. The Haynishes argue that materiality is a factual question that should not be resolved at the pleading stage.

The Haynishes have the better of the two arguments. Whether a violation is material is a factual matter that is not appropriate for a motion to dismiss. *See* G*reene v. Wells Fargo Bank, N.A.*, No. C 15-00048 JSW, 2015 WL 2159460, at *3 (N.D. Cal. May 7, 2015) ("In the absence of any authority defining the meaning of a 'material violation,' the Court declines to impose any additional pleading obligations on Plaintiff."); *see also Dowling v. Bank of Am., N.A.*, No. 114CV01041DADSAB, 2017 WL 3284675, at *5 (E.D. Cal. 2017) ("federal district courts have

concluded that a material violation must interfere with a homeowner's right to be 'considered for' or to have 'a meaningful opportunity' to obtain a loan modification or other foreclosure alternative."). Accordingly, Bank of America's motion to dismiss the Haynishes' dual-tracking claim concerning the July 1 notice of trustee's sale is denied.

### b. SPS and Bank of New York

The Haynishes claim that Bank of New York (along with Bank of America) violated the dual-tracking ban with the July 1 notice of trustee's sale. Dkt. No. 24 at 8-9. The Haynishes also claim that SPS and Bank of New York violated the dual-tracking ban when they orchestrated the trustee's sale on September 17. *Id*. at 9. SPS and Bank of New York say both claims should be dismissed because the FAC fails to satisfy the pleading requirements of Rule 8. They also contend that the Haynishes failed to allege "substantial prejudice."

On the first point, SPS and Bank of New York argue that the Haynishes failed to adequately allege submitting complete loan modification applications prior to July 1 and September 17. Dkt. No. 29 at 10.

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 563 U.S. at 678. Whether a borrower submitted a "complete" modification application is the kind of legal conclusion a court must ignore on a motion to dismiss. *See Withers v. J.P. Morgan Chase Bank N.A.*, No. C 14-0351 SBA, 2014 WL 3418367, at *4 (N.D. Cal. 2014) (granting motion to dismiss where plaintiff alleged that loan servicer "promptly received all documentation requested").

The Haynishes allege that, in the run-up to July 1, they submitted paystubs, Dkt. No. 24 at 5-6, spoke to at least six Bank of America employees (who are identified by name), *id*. at 4-6, and were told at least three times that their modification application was complete, *id*. at 5-6. The Court is satisfied that these facts are sufficient to state a claim for relief under the dual-tracking

ban. By contrast, when the Haynishes describe the September 17 trustee's sale, they say only that "Plaintiffs submitted all the documents requested from Defendant SPS[.]" *Id.* at 7. That conclusory allegation is insufficient to survive a motion to dismiss.

Accordingly, the Court declines to dismiss the Haynishes' dual-tracking claim against Bank of New York concerning the July 1 notice of trustee's sale. However, the Court grants the motion to dismiss the dual-tracking claim concerning the September 17 trustee's sale. Because the Court cannot say for certain that amendment would be futile, the Court dismisses the September 17 claim without prejudice.

Separately, SPS and Bank of New York argue that the dual-tracking claims should be dismissed because the Haynishes failed to allege "substantial prejudice." Dkt. No. 29 at 2. Substantial prejudice is not an element of a dual-tracking claim. To the extent that SPS and Bank of New York mean that the Haynishes failed to allege a material HBOR violation, the Court rejects that argument for the reasons discussed above.

Finally, SPS and Bank of New York also argue that the FAC should be dismissed because of the Statute of Frauds. Dkt. No. 29 at 8. They note that agreements to modify or forbear on a loan are subject to the Statute of Frauds and require consideration. The Haynishes, however, do not claim there was an agreement to modify or forbear on the loan. The Statute of Frauds has no bearing on this case.

### 2. Wrongful Foreclosure (SPS and Bank of New York)

The Haynishes direct their second claim, for wrongful foreclosure, at SPS and Bank of New York. They contend that a claim for wrongful foreclosure lies where the defendant owes a duty to the plaintiff, the defendant breaches that duty, and the breach causes the plaintiff harm. Dkt. No. 24 at 9. SPS and Bank of New York allegedly breached a duty when they (1) caused the Haynishes' home to be sold while a modification application was pending and (2) failed to provide the Haynishes with notice that the August 4, 2015, trustee's sale had been postponed rather than cancelled.[3] Dkt. No. 24 at 10. The Haynishes emphasize that they are seeking damages, not to

_____

[3] The Haynishes here cite to Civil Code § 2924(a)(5). Dkt. No. 24 at 10. That provision states, in relevant part, that "whenever a sale is postponed for a period of at least 10 business days . . . [the

unwind the foreclosure and regain title to their old home. *Id.* at 11.

SPS and Bank of New York argue that a plaintiff suing for wrongful foreclosure must allege tender of the amount due under the debt. The Haynishes counter that tender is not required when a wrongful foreclosure plaintiff seeks legal, as opposed to equitable, relief. Dkt. No. 35 at 5-6. In their reply, SPS and Bank of New York argue that a plaintiff need not plead tender if the underlying foreclosure was void, but must plead tender if the foreclosure was merely voidable. Dkt. No. 38 at 3-4. Both sides contend that *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780 (2013), supports their view of the law. Finally, SPS and Bank of New York say the Haynishes failed to allege "substantial prejudice." Dkt. No. 29 at 10-11.

First off, based on the Court's independent research, the Haynishes misstate the elements of a wrongful foreclosure tort claim. "[I]n California the traditional method by which [a trustee's sale] is attacked is by a suit in equity to set aside the sale." *Munger v. Moore*, 11 Cal. App. 3d 1, 6 (1970). However, "A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929, (2016); *see also Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 410 (2015) ("a tort action lies for wrongful foreclosure, and all proximately caused damages may be recovered"). "The basic elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale." *Id.* at 408 (2015). Specifically:

> "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. . . . [Additionally,] [a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the

---

beneficiary or its agent] shall provide written notice to a borrower regarding the new sale date and time . . . Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f." Cal. Civ. Code § 2924(a)(5) (amended 2018).

> power of sale. In other words, mere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case."

*Id.* at 408-09 (internal citations and quotation marks omitted). For example, in *Majd v. Bank of Am., N.A.*, 243 Cal. App. 4th 1293 (2015), the plaintiff plausibly alleged that but for the defendants' failure to offer a loan modification, "he may have been able to avoid the foreclosure[.]" 243 Cal. App. 4th at 1303-07. The court concluded that such allegations might state a claim for wrongful foreclosure. *See id.* By contrast, demurrer was proper in *Kalnoki v. First American Tr. Servicing Solutions, LLC*, 8 Cal. App. 5th 23 (2017), because the plaintiffs "pleaded no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process nor that the original lender would have refrained from foreclosure under the circumstances presented." 8 Cal. App. 5th at 48-50.

As to the tender requirement, *West* does not significantly advance either side's position. On the one hand, *West* does not say that a wrongful foreclosure plaintiff who seeks damages – as opposed to equitable relief – is exempted from pleading tender. The court in *West* ruled that demurrer was proper precisely because the plaintiff failed to plead tender. *See* 214 Cal. App. 4th at 802. On the other hand, whether a plaintiff must plead tender does not turn exclusively on the void-versus-voidable distinction. As the court in *Majd* noted, there are multiple exceptions to the tender rule, including that a "tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." 243 Cal. App. 4th at 1305. (*quoting Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 113 (2011)).

The Haynishes cannot state a claim for wrongful foreclosure. They fail to plead either tender or exemption from the tender requirement. More importantly, they cannot plausibly allege that they were prejudiced, or that the defendants committed more than "technical violations" in an otherwise valid foreclosure. Nothing in the FAC suggests that, absent any dual-tracking or notice violations, the trustee's sale would not have occurred. Furthermore, even if SPS and Bank of New York did violate the dual-tracking or notice rules, neither would operate to make the trustee's sale voidable, much less void. *See* Cal. Civ. Code §§ 2924(a)(5) (failure to comply with notice

requirement does not invalidate otherwise valid trustee's sale); 2924.12(b) (post-foreclosure, a plaintiff may recover damages for material dual-tracking violations). The Haynishes may not have been happy about when the trustee's sale occurred, but they do not allege any facts to suggest it should or would not have occurred eventually. The Court dismisses the Haynishes' wrongful foreclosure claim with prejudice.

### 3. Negligence (All Defendants)

The Haynishes claim that all three defendants negligently handled loan modification applications. Dkt. No. 24 at 11-13. The defendants all argue that lenders owe no duty of care to borrowers when considering modification applications.[4] The Court agrees.

As this Court has previously noted, there is a split in authority as to whether lenders owe borrowers a duty of care in the context of loan modification applications. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (citations omitted). In one line of cases, courts have held that lenders do not have a duty of care because "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013). Other courts disagree. *See Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014).

The Haynishes ask the Court to follow the *Alvarez* line of cases. They also seek to limit *Lueras* to its facts, arguing that a lender has a duty to exercise reasonable care once it affirmatively agrees to consider a loan modification application. Dkt. No. 35 at 9. This Court has repeatedly considered the issue and concluded that lenders owe no duty of care in the loan modification context, even when the lender apparently agreed to consider a borrower's modification application. *See Vethody v. Nat'l Default Servs. Corp.*, No. 16-CV-04713-HRL, 2016 WL

---

[4] The defendants raise other arguments for why a negligence claim must fail, such as failure to adequately plead causation. Dkt. No. 29 at 12. The Court declines to reach these arguments, as the Court's decision on whether lenders owe borrowers a duty of care is sufficient to resolve the Haynishes' claim.

7451666, at *6 (N.D. Cal. 2016). The loan modification process is "indistinguishable from the process of providing an original loan, and therefore, fall[s] within the lender's 'conventional role as a lender of money.'" *Morton v. Wells Fargo Bank, N.A.*, No. 16-CV-05833-HRL, 2016 WL 7117041, at *5 (N.D. Cal. 2016) (*quoting Marques v. Wells Fargo Bank, N.A.*, No. 16-cv-03973-YGR, 2016 WL 5942329, at *8 (N.D. Cal. 2016)).

Because the Court concludes that the defendants did not owe the Haynishes a duty of care, the Haynishes fail to state a claim for negligence. Amendment would be futile, so the Court dismisses the negligence claims with prejudice.

### 4. Unfair Competition Law (All Defendants)

Finally, the Haynishes allege that all three defendants violated California's Unfair Competition Law. They allege that the defendants' statutory and common law violations constitute "unlawful business practices and fraudulent business practices[.]" Dkt. No. 24 at 13. The Haynishes say they suffered damages in the form of lost equity in their home, along with attorneys' fees and destruction of their credit.

Bank of America, SPS, and Bank of New York move to dismiss the claim, raising similar, overlapping arguments. All three defendants argue that the Haynishes failed to adequately allege an underlying claim. SPS and Bank of New York contend that the Haynishes lack standing to sue, Dkt. No. 29 at 13, while Bank of America says they have no viable remedy, Dkt. No. 27 at 11-12.

The UCL prohibits four categories of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice," as well as false advertising. *See* Cal. Bus & Prof. Code § 17200. The unlawful category of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "To state a claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Johnson v. PNC Mortg.*, No. C 14-02976 LB, 2014 WL 3962662, at *11 (N.D. Cal. 2014) (citations omitted).

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that

that economic injury was the result of, i.e., *caused by*, the [unfair competition] . . . ." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see also* Cal. Bus. & Prof. Code § 17204. "A plaintiff fails to satisfy the causation prong . . . if he or she would have suffered the same harm whether or not a defendant complied with the law." *Mendoza v. Nationstar Mortg., LLC*., No. 15-CV-04229-BLF, 2016 WL 368125, at *2 (N.D. Cal. 2016) (*quoting Jenkins, v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523, *overruled on other grounds by Yvanova v. New Century Mortgage Corp*, 62 Cal. 4th 919 (2016)).

Finally, as to remedies, "While the scope of conduct covered by the UCL is broad, its remedies are limited.  UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citations omitted).  Private plaintiffs may seek injunctive relief or restitution.  *See id.*  The UCL's restitution provision "operates only to return to a person those measureable amounts which are wrongfully taken by means of an unfair business practice." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998).

The Haynishes contend that they "adequately asserted causes of action for Statutory Violations and Negligence."  Dkt. Nos 33 at 10; 35 at 11-12 (same).  The Court understands the Haynishes to mean that they pleaded UCL claims, within the "unlawful" category, based on underlying claims for negligence and violations of the HBOR.  Although the Haynishes also accuse the defendants of "fraudulent business practices," neither the FAC nor the motion papers elaborate on this other category of UCL claims.

Given that understanding, the Haynishes failed to adequately plead a UCL claim.  First, to the extent the Court dismissed the underlying claims, the Haynishes cannot plead UCL violations based on those claims.  The Haynishes may not plead a negligence-based UCL claim because the Court has now dismissed the underlying claim with prejudice.  As for the HBOR claims that survived this motion to dismiss, the Haynishes have not established standing to sue under the UCL.  Setting aside the question of economic injury, the Haynishes did not satisfy the causation prong of the UCL's standing test.  The but-for cause of the foreclosure appears to have been the Haynishes' default on the loan, not any alleged dual-tracking violation by the defendants.  As it stands, the Haynishes have not adequately alleged that they would not have suffered any harm

absent an HBOR violation. That is not sufficient to state a claim under the UCL.

Additionally, the Haynishes have failed to explain what relief, if any, they could receive under the UCL. They say they "seek injunctive relief enjoining Defendant[s] from engaging in" unfair practices. Dkt. No. 24 at 13. But if the Haynishes do not seek to undo the trustee's sale, what possible injunctive relief could the Court provide? Their claim for restitution also fails. The Haynishes accuse the defendants of causing them harm – in the form of lost equity in their home and attorneys' fees, among other things – but they fail to allege that any of the defendants took anything from them wrongfully. The default on the loan entitled the trustee to sell the house, and the Haynishes have never suggested otherwise. As to attorneys' fees, the Haynishes did not pay those fees to the defendants, so they are not recoverable as restitution.

The Court dismisses the Haynishes' UCL claims. As the Court cannot say for certain that amendment would be futile, the claims are dismissed with leave to amend. *See Mendoza v. Nationstar Mortg.*, LLC., No. 15-CV-04229-BLF, 2016 WL 368125, at *2 (N.D. Cal. 2016) (dismissing claim with leave to amend where plaintiff failed to plead UCL causation).

### C.    Motion to Strike

In addition to their Rule 12(b)(6) motion, SPS and Bank of New York also move to strike portions of the FAC concerning attorneys' fees, emotional damages, and punitive damages. The question is largely moot, as the Court has dismissed the majority of the Haynishes' complaint. To the extent the question is still live, the Court denies the motion to strike.

The Haynishes seek attorneys' fees under the deed of trust. Dkt. Nos. 24 at 4; 36 at 3-4. They also seek emotional damages related to their claims for negligence and wrongful foreclosure. Dkt. No. 36 at 2-3. Finally, they seek punitive damages under California Civil Code § 3294. *Id.* at 1-2. SPS and Bank of New York seek to have those portions of the FAC dismissed. Dkt. No. 30. They argue that the Haynishes' misstate and misinterpret the attorneys' fees provision in the deed of trust. They also argue that the Haynishes fail to adequately allege entitlement to emotional or punitive damages.

Rule 12(f) permits a court to "strike from a pleading any . . . redundant, immaterial, impertinent, or scandalous matter." A matter is immaterial if it "has no essential or important

United States District Court
Northern District of California

relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds* 510 U.S. 517 (1994). A matter is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* In the Ninth Circuit, a court may not strike prayers for damages even if they are unavailable as a matter of law: "[A] claim for damages is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief . . . [and] is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Rule 12(f) is not meant to duplicate Rule 12(b)(6) or Rule 56. *See id.* Whether to grant a motion to strike is within the discretion of the court. *See id.* at 973.

Here, SPS and Bank of New York do not claim that anything in the Haynishes' FAC is redundant or scandalous. As to the Haynishes' prayers for various forms of damages, those matters are neither immaterial nor impertinent. Under the Ninth Circuit's strict interpretation of Rule 12(f), the question of whether damages are available bears a logical connection to the Haynishes' underlying claims. If SPS and Bank of New York wish to challenge the availability of those damages, they may do so at some other stage in the proceedings. The motion to strike, however, is denied.

## IV.   CONCLUSION

For the reasons explained above, the Court GRANTS the requests for judicial notice. The Court DENIES Bank of America's motion to dismiss the dual-tracking claim; DENIES SPS and Bank of New York's motion to dismiss the dual-tracking claim concerning the July 1, 2015, notice of trustee's sale, but GRANTS the motion as to the September 15, 2017, trustee's sale with leave to amend; GRANTS the motion as to the unlawful foreclosure claim without leave to amend; GRANTS the motions as to the negligence claims without leave to amend; and GRANTS the motions as the UCL claims with leave to amend. Finally, the Court DENIES SPS and Bank of New York's motion to strike.

If the Haynishes wish to further amend their complaint, they must do so within 30 days. The Haynishes may not add any additional claims without first seeking leave of the Court.

**IT IS SO ORDERED.**

Dated: February 9, 2018

_____
HOWARD R. LLOYD
United States Magistrate Judge