United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THEODORE HAYNISH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | Case No.17-cv-01011-HRL<br><br>**ORDER ON MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 67, 69 |

## I. INTRODUCTION

Theodore Haynish, Jr. and Jacqueline Haynish ("the Haynishes") sue Bank of America, N.A., ("Bank of America"), Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2005-3 ("Bank of New York") (collectively "Defendants"). The Haynishes bring two claims related to the foreclosure of their former home.

Previously the Court granted in part and denied in part motions to dismiss the Haynishes' First Amended Complaint ("FAC"). *Haynish v. Bank of America, N.A.*, 284 F. Supp. 3d 1037 (N.D. Cal. Feb. 9, 2018), Dkt. No. 62. The Haynishes then filed a Second Amended Complaint, Dkt. No. 64, which SPS and Bank of New York now move to dismiss for failure to state a claim upon which relief can be granted. Dkt. No. 67. Bank of America joins in that motion. Dkt. No. 69. Dkt. No. 69. For the reasons explained below, the Court grants Defendants' motions and dismisses the Haynishes' Second Amended Complaint.

All parties consented to have this matter adjudicated by a magistrate judge. Dkt. Nos. 9, 13, 18.

## II. BACKGROUND

### A. Factual Allegations

The Court discussed the Haynishes' factual allegations in its order on the prior motions to dismiss, and those allegations have not changed much between the First and Second Amended Complaints. Dkt. No. 62 at 2-3. The Court briefly recounts the relevant allegations now.

The Haynishes owned and lived in a house at 885 Heatherwood Estates Drive in Hollister, California. In 2005 they refinanced their home loan, executing a promissory note along with a first lien deed of trust to secure the note. Dkt. No. 64 at 4. Bank of America serviced the loan from 2010 to July 2015, and SPS filled that role from July 2015 onward. *Id.* at 4-7. Bank of New York was the trustee. *Id.* at 3.

The Haynishes "suffered a hardship" in 2011 and set out to obtain a loan modification. *Id.* at 5. This set off a four-year ordeal in which they "were forced to submit and resubmit countless documents," all "to no avail." *Id.* For instance, in the spring of 2015 a Bank of America employee confirmed receipt of a complete modification application but soon afterwards the Haynishes received a letter in the mail saying the opposite: their application would not be reviewed for failure to submit all of the required documents. *Id.* at 5-6. Bank of America later said that the letter had been sent in error. *Id.* at 6. The cycle continued.

In January 2015, the Haynishes' monthly income decreased from about $10,000 to $8,800, and they submitted documentary evidence of the change as part of their modification applications. *Id.* at 5-6. Nevertheless, the loan servicers pushed ahead with the foreclosure process. Bank of America and Bank of New York recorded a notice of trustee's sale in July 2015. *Id.* at 6. Then in September 2015, SPS and Bank of New York conducted a trustee's sale. *Id.* at 7-8. The Haynishes moved out, losing about $200,000 of equity in the property. *Id.* at 8.

### B. Procedural Background

The FAC asserted claims for negligence, wrongful foreclosure, violations of California Civil Code § 2923.6 ("Homeowner Bill of Rights" or "HBOR"), and violations of California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL"). Dkt. No. 24. Defendants all moved to dismiss under Rule 12(b)(6) and the Court granted the motions in part.

2

Dkt. No. 62. Specifically, the Court:

- granted the motions as to the negligence and wrongful foreclosure claims, without leave to amend, *id.* at 10-14;
- denied the motions as to the HBOR claim against Bank of America and Bank of New York concerning the July 2015 notice of trustee's sale, *id.* at 7-9;
- granted the motions as to the HBOR claim against SPS and Bank of New York concerning the September 2015 trustee's sale, with leave to amend, *id.* at 9-10; and
- granted the motions as to the Haynishes' UCL claims with leave to amend, except insofar as any UCL claim was premised on Defendants' alleged negligence, *id.* at 14-16.

The Second Amended Complaint now asserts claims under HBOR and the UCL. The Haynishes again allege that Bank of America and Bank of New York violated HBOR's ban on "dual tracking" loan modification applications when they recorded the July 2015 notice of trustee's sale. Dkt. No. 64 at 9. They also again accuse SPS and Bank of New York of violating the same HBOR provision by conducting the September 2015 trustee's sale. *Id.* Finally, the Haynishes reassert their claims under the Unfair Competition Law. *Id.* at 9-10.

As with the FAC, the Second Amended Complaint gives no indication that the Haynishes ever received a definitive answer to any of their loan modification applications, but that is not the whole story. As the Court discussed in its order on the motions to dismiss the FAC, the Haynishes conceded in their motion papers and at oral argument that Bank of America issued multiple written denials on modification applications between 2012 and 2015. Dkt. No. 62 at 4-6. The Haynishes make the same concessions now. *See* Dkt. No. 72 at 16. The Haynishes still insist that they can state a viable dual tracking claim despite the pre-2015 modification denials, so the Court continues to understand their claims on that basis. *See Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) ("The court can consider, for instance, facts subject to judicial notice, implications from documents incorporated into the complaint, and *concessions in*

*the complainant's response to the motion to dismiss.*") (emphasis added).[1]

## III. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court will not assume the truth of legal conclusions. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (*quoting Twombly*, 550 U.S. at 682). "Dismissal may also be based on the absence of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV. DISCUSSION

### A. Tender as an Element of an HBOR Dual Tracking Claim

Defendants argue that the Haynishes fail to state a claim because the complaint does not allege tender of the amount due under the loan. Dkt. No. 67 at 15. Tender, however, is not an element of a dual tracking claim. *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal. App. 4th 1267, 1273-74, (2015). "[S]uch a requirement would completely eviscerate the remedial provisions of the [HBOR] statute." *Id.*

### B. Dual Tracking Claims Post-January 1, 2018

Defendants argue that the Haynishes' dual tracking claims do not survive recent changes to the HBOR statute. Dkt. No. 67 at 16-18. The Haynishes disagree, contending that their claims under the old Civil Code section 2923.6 were preserved by other provisions in the new version of

---

[1] The Court also grants Defendants' unopposed motion for judicial notice because all of the documents offered by Defendants are matters of public record. *See Roca v. Wells Fargo Bank, N.A.*, 15-cv-2147-KAW, 2016 WL 368153, at *3 (N.D. Cal. 2016) (*quoting* Fed. R. Evid. 201(b)).

4

the law. Dkt. No. 72 at 13-16.

California's Homeowner Bill of Rights is in a sense two laws in one. One set of provisions applied between 2013 and January 1, 2018, at which point an automatic sunset provision kicked in. The pre-2018 laws were repealed and a new, second set of provisions took their place. One aspect of HBOR affected by this repeal-and-replace scheme was the ban on "dual tracking," where a financial institution[2] simultaneously considers a borrower's loan modification application (track one) while advancing the foreclosure process (track two). Between 2013 and 2018, section 2923.6(c) of the Civil Code read:

> "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

Cal. Civ. Code § 2923.6(c) (2013). With exceptions not relevant here, a financial institution could not advance the foreclosure process until the servicer made a written determination that the borrower did not qualify for a loan modification and the borrower failed to appeal within thirty days. *Id.* §§ 2923.6 (c)-(e) (2013). To facilitate appeals, the pre-2018 law required a servicer to provide a borrower with detailed information about why a modification application had been denied, including (if applicable) the inputs used in any net present value ("NPV") calculation. *Id.* § 2923.6(f)(3) (2013); *Jacobik v. Wells Fargo Bank, N.A.*, No. 17-CV-05121-LB, 2018 WL 1184812, at *4 (N.D. Cal. Mar. 7, 2018). Especially important was section 2923.6(g), which could modify the application of the general dual tracking ban:

> "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change

---
[2] The dual tracking ban governs the conduct of mortgage servicers, mortgagees, trustees, beneficiaries, and authorized agents, Cal. Civ. Code 2923.6(c) (2013), but for the sake of brevity, the Court will refer to all of them with the umbrella term "financial institution."

5

>in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."

Cal. Civ. Code § 2923.6(g) (2013). The law created a private right of action for borrowers to challenge "material violations" of the dual tracking ban. *Id.* § 2924.12(b) (2013).

The post-2018 law retained the ban on dual tracking but reshuffled the Civil Code. Section 2924.11 of the current law provides:

>"If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative."

Cal. Civ. Code § 2924.11(a) (2018). The new law still requires a servicer to justify the denial of a modification application, but the disclosure requirements are less specific. *See id.* § 2924.11(b); *Jacobik*, 2018 WL 1184812, at *4 (discussing repeal of requirement that servicer disclose inputs used in NPV calculation). Also gone is the old 2923.6(g), which offered a borrower whose modification application had previously been denied a reprieve from foreclosure if the borrower could establish a material change in circumstances. As with the old law, though, a borrower may still sue for a "material violation" of the dual tracking ban. Cal. Civ. Code § 2924.12(b) (2018).

Defendants argue that the repeal of the old section 2923.6 forecloses the Haynishes' dual tracking claims. Dkt. No. 67 at 16-18. Even if Defendants violated the law in 2015, they say, any claims the Haynishes had are no longer available. Defendants acknowledge that the current section 2923.11 resembles the old section 2923.6, but they reject the idea that the former was meant to "save" claims arising under the latter. They emphasize the lack of an express savings clause and point out that the current law defines dual tracking more narrowly than before (unlike the pre-2018 law, the current law does not prohibit the recording of a notice of default while a modification application is pending). Finally, they note the repeal of the old law's mandatory thirty-day appeals window. In light of all of these changes to the statute, Defendants argue, the Court should dismiss the Haynishes' dual tracking claims without leave to amend.

6

The Haynishes say that section 2923.11 preserved claims arising under the pre-2018 section 2923.6. After all, both provisions were enacted at the same time, so they represent a "unitary legislative scheme" to "protect a borrower from being dual tracked in the very manner at issue in this lawsuit." Dkt. No. 72 at 14 (*quoting Jacobik*, 2018 WL 1184812, at *5).

Under a "long[,] well-established line of California decisions . . . when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, a repeal of (the) statute without a saving clause will terminate all pending actions based thereon." *Governing Bd. v. Mann*, 18 Cal. 3d 819, 829 (1977) (citation and internal quotation marks omitted); *see also* Cal. Gov. Code § 9606 ("Any statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal."). Whether such a right has "vested under the statute" is construed narrowly: "If final relief has not been granted before the repeal goes into effect, such relief cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal." *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1606 (2009). There is also a strong presumption against the retroactive application of new laws. *See Western Security Bank v. Superior Court*, 15 Cal. 4th 232, 243 (1997) ("A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so.").

Despite the default rule that repeal of a statute terminates all pending claims based on that statute, the legislature can "save" pending claims in one of two ways. First, it can include an express savings clause. *Bourquez v. Superior Court*, 156 Cal. App. 4th 1275, 1284 (2007) (citation omitted). Second, it can make its intent to preserve rights under the former law "clearly apparent." *Id.* "[I]f it can be gathered from any act on the same subject passed by the [L]egislature at the same session that it was the legislative intent that pending proceedings should be saved, it will be sufficient to effect that purpose." *Id.* (citation and internal quotation marks omitted). Otherwise, though, a court must "dispose of the case under the law in force when its decision is rendered." *Mann*, 18 Cal. 3d at 822-23.

Here, any claim the Haynishes might have had under the pre-2018 section 2923.6 did not vest because they have not yet been granted final relief. According to Defendants, the Haynishes

7

have sued three times over the foreclosure of their home, but none of those cases (including this one) have ever made it past the pleading stage. Dkt. No. 67 at 12-13. Moreover, the Haynishes do not argue that the post-2018 HBOR applies retroactively, and nothing in the law suggests to the Court that the legislature meant to take that unusual step. *See Yadav-Ranjan v. Nationstar Mortg., LLC*, No. 17-CV-03939 NC, 2018 WL 659018, at *4 (N.D. Cal. Feb. 1, 2018) (describing two-step test for retroactivity). So the question now is whether the current section 2924.11 saves claims under the old section 2923.6.

Defendants make too much of the absence of a savings clause in HBOR, as legislative intent may be enough to save a statutory cause of action. *See Bourquez*, 156 Cal. App. 4th at 1284. Nevertheless, the Court concludes that the Haynishes' dual tracking claims died on January 1, 2018.

In one sense, the new dual tracking ban is broader than the old one. Whereas the pre-2018 law applied only to "loan modification applications," the current section 2923.11 applies to "foreclosure prevention alternatives," which the statute defines as a "loan modification or other available loss mitigation option." Cal. Civ. Code § 2920.5(b) (2018). The two laws are also mostly coextensive when it comes to prohibiting financial institutions from advancing the foreclosure process while a modification application is pending. Under both the old and new laws, a financial institution may not record a notice of sale or conduct a trustee's sale while a modification application is under review. *Compare* Cal Civ. Code § 2923.6(c) (2013) *with id.* § 2924.11(a) (2018).

Yet the similarities end there. Now, if a servicer denies a modification application, it still must provide written notice of its decision, but that notice can be less detailed than before. *See Jacobik*, 2018 WL 1184812, at *4. Borrowers also lost the protection of the mandatory thirty-day appeal period. *See id.* at *5.

In this case, the change that is most important concerns the old section 2923.6(g). The Haynishes say that because that provision was repealed, they do not need to allege a material change in their financial circumstances since their pre-2015 applications were denied. Dkt. No. 72 at 16. That gets it backwards. Before 2018 a borrower who had previously been denied a loan

8

1 modification could get an additional modification application reviewed if he documented and
2 submitted evidence of a material change in circumstances. Cal Civ. Code § 2923.6(g) (2013).
3 The repeal of that provision does not suggest a loosening of pleading requirements for plaintiffs; it
4 instead suggests that under the current law, a servicer is not obligated to review a modification
5 application from a borrower who was previously denied, even if the borrower experienced a
6 material change in circumstances since the last denial. In other words, once a servicer denies a
7 loan modification application, the borrower is out of luck, at least in the sense that no dual
8 tracking claim will lie if the borrower then submits another modification application and the
9 servicer pushes ahead with foreclosure. The Haynishes essentially ask the Court to conclude that
10 the new HBOR is more favorable to borrowers than the old HBOR, but that is inconsistent with
11 Judge Beeler's decision in *Jacobik* (less stringent disclosure requirements for potential defendants)
12 and the repeal of the mandatory thirty-day appeal period. The basic thrust of the post-2018 HBOR
13 is that it offers less protection for borrowers than before, not more.

14 The Haynishes, quoting *Jacobik*, note in their opposition that both versions of the dual tracking ban were "'enacted in 2012 as part of a unitary legislative scheme that was designed from the outset to impose heightened borrower protection' to protect a borrower from being dual tracked in the very manner at issue in this lawsuit." Dkt. No 72 at 14. The Haynishes omit an important part of the quote: "[B]oth statutes were enacted in 2012 as part of a unitary legislative scheme that was designed from the outset to impose heightened borrower protections *for five years – from January 1, 2013 to December 31, 2017 – and to sunset those protections after five years.*" 2018 WL 1184812, at *5 (emphasis added). The old section 2923.6(g) was indeed part of a broader scheme to protect borrowers, but once the initial five-year period ended, so too did some of the "heightened borrower protections."

24 The changes to HBOR are fatal the Haynishes' dual tracking claims. If, as the Haynishes acknowledge, their pre-2015 loan modification applications were denied, then under the new law Defendants were not required to refrain from foreclosure while additional modification applications were pending. Defendants could not have violated the ban on dual tracking because they were not obligated to review any more applications. Accordingly, the Court must dismiss the

9

Haynishes' dual tracking claims. The Court concludes that further amendment could not cure this defect, so the claims are dismissed without leave to amend.

### C. Unfair Competition Law Claims

The Court previously dismissed the Haynishes' claims under California's Unfair Competition Law, partially with leave to amend. Dkt. No. 62 at 14-16. The Court warned the Haynishes, however, that they had failed to adequately plead standing and that they had not explained what remedies they hoped to obtain under the UCL. *Id.* The Haynishes did not heed the Court's warning. The Second Amended Complaint's description of the UCL claims is a word-for-word copy of the corresponding section of the FAC; the only difference is the numbering of the paragraphs.

As the Court explained previously, standing under the UCL requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the [unfair competition] . . . ." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see also* Cal. Bus. & Prof. Code § 17204. "A plaintiff fails to satisfy the causation prong . . . if he or she would have suffered the same harm whether or not a defendant complied with the law." *Mendoza v. Nationstar Mortg.*, LLC., No. 15-CV-04229-BLF, 2016 WL 368125, at *2 (N.D. Cal. 2016) (*quoting Jenkins, v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013), *overruled on other grounds by Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919 (2016)).

The Haynishes again fail to satisfy the causation prong of the UCL standing test. The Haynishes insist that they suffered harm in the form of "the loss of their home and substantial equity therein." Dkt. No. 72 at 19. That may be so, but for the claims to survive a motion to dismiss the Haynishes must plausibly allege that Defendants' illegal dual tracking was the but-for cause of that harm. *See Jenkins*, 216 Cal. App. 4th at 522–23. The Second Amended Complaint does not do that. It was the Haynishes' default, not the dual tracking, that ultimately caused the foreclosure, and the Haynishes have not plausibly alleged that they would have kept their home if only Defendants had not dual tracked their modification applications.

Similarly, as the Court noted before, a plaintiff may seek only injunctive relief under the

UCL, and the law's restitution provision "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair practice." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998). The Haynishes do not seek to undo the foreclosure sale, so the Court cannot grant them prospective injunctive relief, and they have never contended that the foreclosure was anything other than lawful, so they cannot plausibly allege that Defendants ever took anything from them wrongfully. On those facts, the Haynishes do not have a viable remedy under the UCL.

The Court therefore dismisses the Haynishes' UCL claims. The Court already explained why the claims were deficient but the Haynishes did not even try to correct those deficiencies, so the Court finds that further amendment would be pointless. The claims are dismissed without leave to amend.

## V.  CONCLUSION

For the reasons explained above, the Court grants Defendants' motions to dismiss the Haynishes' Second Amended Complaint without leave to amend. Judgment will be entered for Defendants.

**IT IS SO ORDERED.**

Dated: May 31, 2018

HOWARD R. LLOYD
United States Magistrate Judge